APPEAL NO. 22-16936
_____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT
_____

**ANDREW SABLAN SALAS**,

Plaintiff-Appellant,

vs.

**UNITED STATES OF AMERICA,**

Defendant-Appellee.

_____

Appeal from the District Court for the Northern Mariana Islands
District Court No. 1:22-cv-00008
_____

# FURTHER EXCERPTS OF RECORD
_____

                JOSEPH E. HOREY
                BANES HOREY BERMAN & MILLER, LLC
                First Floor, Macaranas Building
                4165 Beach Road, Garapan
                Commonwealth of the Northern Mariana Islands
                PO Box 501969, Saipan MP 96950
                Telephone: (670) 234-5684
                Fax No. (670) 234-568

## TABLE OF CONTENTS

Reply in Support of Motion to Dismiss (ECF No. 9) (excerpt) — 3

Opposition to Motion to Dismiss (ECF No. 8) (excerpt) — 6

## II. THE 2018 AMENDMENT TO THE ANIMAL WELFARE ACT NEED NOT NAME THE NORTHERN MARIANA ISLANDS.

Defendant agrees with Plaintiff that, if the Court were to hold that § 2156 applied to the Northern Mariana Islands, then it must necessarily hold that the 2018 amendment also applies to the Northern Mariana Islands because, under Section 502(a)(2) of the Covenant, amendments to applicable laws are also made applicable. *See* Pl.'s Br. at 12. In any event, Plaintiff's conditional argument that the 2018 amendment must specifically name the Northern Mariana Islands if it is regarded as a "new law" is deeply flawed. As explained in Defendant's opening brief, Section 105 of the Covenant does not come into play here because the 2018 amendment does not rely exclusively on Congress's Territorial Clause powers, and Congress clearly could have (and did) apply the 2018 amendment to all the several States under its Commerce Clause powers. Def.'s Br. at 15–17.

Plaintiff insists that there is "no basis" for Defendant's "assumption" that the specific-naming requirement of Section 105 is intended to apply only where Congress acts exclusively under its Territorial Clause powers. Pl.'s Br. at 14. This assertion simply ignores rather than addresses the cited authority supporting Defendant's reading. As explained, the discussion of Section 105 in the Section-by-Section Analysis of the Covenant, which has been employed by the Ninth Circuit as an authoritative interpretive guide, *Northern Mariana Islands*, 399 F.3d at 1065, makes clear that the specific-naming requirement is intended to ensure that Congress uses its broad Territorial Clause powers "purposefully" when it comes to the Northern Mariana Islands. Def.'s Br. at 15–16 (quoting Section-by-Section Analysis at 630). Plaintiff cannot escape the impact of this authority by simply ignoring it.

By contrast, Plaintiff's bald insistence that the specific-naming requirement of Section 105 must be construed to apply whenever Congress "cannot as a practical reality" apply a law to the several States

5

is unsupported by reasoned argument or authority. Such a reading is also contrary to the plain text of Section 105. It speaks of law that "cannot be made applicable to the several states," not laws that "actually are applicable." The use of the phrase "be made" in the provision denotes that it is speaking in terms of law that cannot theoretically be applied to the several States, not laws that actually are applicable to the several states. Because the statutory prohibition on animal fighting and the repeal of the conditional exemption for cockfighting are valid exercises of Congress's Commerce Clause authority and do not rely exclusively on the Territorial Clause, the specific-naming requirement is not implicated.[1]

In any event, the 2018 amendment did in fact apply in every state because it changed the law in every state. As explained, there has never been an independent statutory provision prohibiting cockfighting. There are the general prohibitions on activities regarding animal fighting ventures, and, until 2019, there was the conditional exception for cockfighting. Again, that exception imposed a conditional test: cockfighting would be legal if it was legal under state law, and illegal if it was illegal under state law. That test applied in every state and territory, and, in some places, it had the effect of making cockfighting legal, and in others it had the effect of keeping cockfighting illegal. Following the 2018 amendment, which simply struck the subsection setting forth the conditional test from the statute, the conditional test no longer applies anywhere. This changes the law in every state, including those states where cockfighting was illegal under state law. Should those states repeal their prohibitions on cockfighting, it would nevertheless remain prohibited under federal law. Consequently, even assuming Plaintiff's flawed reading of Section 105 as requiring specific naming of the Northern Mariana Islands

---

[1] It does not matter that some Courts have concluded that the repeal of the cockfighting exception would be permitted under the Territorial Clause. Because the prohibitions on animal fighting ventures and the 2018 amendment repealing the cockfighting exception also invoked and are valid under the Commerce Clause, the 2018 amendment can "be made applicable to the several states" and, therefore, the Northern Mariana Islands need not be specifically named.

6

whenever a law does not "as a practical reality" apply to the several states, the 2018 amendment would not meet that criterion.

Plaintiff is incorrect that Defendant's construction of the Covenant thwarts the purpose of "preventing the application of laws so as to reach intra-territorial matters within the Northern Mariana Islands where similar intrastate matters within the states are not reached." Pl.'s Br. at 16 (quoting Section-by-Section Analysis at 23–24). In fact, Defendant's construction of the Covenant has precisely the opposite effect. It achieves Congress's intent to make uniform the federal prohibition of cockfighting throughout the states and territories. In other words, it means that precisely the same activities are "reached" in the states as are reached in the Northern Mariana Islands, thereby fulfilling (not subverting) the intent of the Covenant. In any event, as explained more below, prohibited forms of cockfighting are, by definition, not purely "intra-territorial" or "intrastate" activities.

## III. THE ANIMAL WELFARE ACT DOES NOT GOVERN PURELY INTERNAL AFFAIRS, AND THERE IS A PREVAILING FEDERAL INTEREST IN BANNING COCKFIGHTING.

Plaintiff contends that prohibiting cockfighting in the Northern Mariana Islands violates Sections 103 and 105 of the Covenant because the federal interest in banning cockfighting does not outweigh "the degree of intrusion into the internal affairs of the" Northern Mariana Islands. *De Leon Guerrero*, 4 F.3d at 754; Pl.'s Br. at 17–21. It does not appear that any federal law has ever been deemed not to apply the Northern Mariana Islands under Sections 103 and 105, and the federal prohibition of cockfighting should certainly not be the first. Indeed, as Defendant explained, Def.'s Br. at 17–18, the ban on animal fighting (which now includes an outright ban on cockfighting) does not concern the "internal affairs" of Northern

Finally, in arguing that 7 U.S.C. § 2156 became applicable through COVENANT § 502(a)(2), the United States relies on the Second Interim Report of the NMI Commission on Federal Laws. *See* Motion at 14. However, there are at least four problems with this argument. First, the passage cited does not discuss 7 U.S.C. § 2156, or any part of Title 7, Chapter 54 (the Animal Welfare Act), at all, except in the vaguest terms as one of dozens of "remaining chapters in Title 7," after Chapter 12. Second, the Commission was an advisory board tasked with recommending what laws "should" apply, not framers deciding what laws *do* apply. *See* COVENANT § 504. Third, even if the Commission did consider 7 U.S.C. § 2156 at the time (1985), it would have discovered the 1976 version of the law, which exempted jurisdictions – like the CNMI – where local law allowed cockfighting. Fourth, the Second Interim Report is just that – an *interim* report. The Commission's Final Report eschewed the Interim Report's law-by-law approach in favor of "a more general rule by which the application of federal law can be judged in the future." *See* Final Report of Commission on Federal Laws, attached as Exhibit 5. The Final Report has also been relied on by the Ninth Circuit. *See* Saipan Stevedore Co. Inc. v. Director, Office of Workers' Comp. Programs, 133 F.3d 717, 725 (9th Cir. 1998).

### B. The Cockfight Prohibition Does Not Apply to the CNMI Via Section 105.

Plaintiff submits that the applicability of AIA § 12616 to the CNMI is properly evaluated under the formula of COVENANT § 502(a)(2), because it was a "subsequent amendment" of a law "in existence" on January 9, 1978, namely 7 U.S.C. § 2156(a). However, if it is viewed as a new law enacted in 2018, perhaps because it imposed new legal burdens in places where they had not previously existed, its applicability would be evaluated under COVENANT § 105. *See* United States ex rel. Richards v. De Leon Guerrero, 4 F.3d 749, 756 (9th Cir. 1993) ("Section 502 governs the application to the CNMI of federal laws existing prior to January 9, 1978, and . . .

0006

Section 105 governs the application of federal laws enacted after that date."). Section 105 provides as follows:

> The United States may enact legislation in accordance with its constitutional processes which will be applicable to the Northern Mariana Islands, but if such legislation cannot also be made applicable to the several States the Northern Mariana Islands must be specifically named therein for it to become effective in the Northern Mariana Islands. In order to respect the right of self-government guaranteed by this Covenant the United States agrees to limit the exercise of that authority so that the fundamental provisions of this Covenant, namely Articles I, II and III and Sections 501 and 805, may be modified only with the consent of the Government of the United States and the Government of the Northern Mariana Islands.

COVENANT § 105. It is clear from the face of AIA § 12616 that the CNMI is not "specifically named" anywhere in it. *See* 7 U.S.C. § 2156(f)(3) ("[T]he term 'State' means any State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, and any territory or possession of the United States[.]").[10] The United States contends, however, that the "specific

---

[10] In fact, it is not clear that it is named even generically. As the United States notes, the statutory term "territories" has sometimes been construed as including the CNMI, but the Ninth Circuit has also been recognized that the CNMI may not be properly termed a "territory" at all. *See, e.g.*, Commonwealth of the Northern Mariana Islands v. Atalig, 723 F.2d 682, 691 & fn. 28 (9th Cir. 1984) (not deciding, but finding merit to, the argument that "the NMI should be treated as neither an incorporated nor an unincorporated territory"); Wabol v. Villacrusis, 958 F.2d 1450, 1460 fn. 18 (9th Cir. 1990) ("It is undisputed that the Commonwealth is not an incorporated territory, though the precise status of the Commonwealth is far from clear.").

Furthermore, in modern statutory definitions, "territories" and "commonwealths" are often listed separately or distinguished, indicating that even Congress does not, or at least does not always, regard these as the same thing. Here, for example, "the Commonwealth of Puerto Rico" is listed distinctly from "any territory" (not, significantly, any "other" territory) – as distinctly as is "any State." *See also, e.g.*, 33 U.S.C. § 701h-1 ("For purposes of this section, the term 'State' means the several States, the District of Columbia, the commonwealths, territories, and possessions of the United States, and Indian tribes[.]"); U.S. Pub. L. 109–163, 119 Stat 3136 (January 6, 2006), at §1057(a)(5) ("The following sections are amended by striking 'Territories, Commonwealths, or possessions' each place it appears and inserting 'Commonwealths or possessions' . . ."). This is ultimately irrelevant, of course, as the Covenant requires the CNMI to be named *specifically*. General reference to "territories" are not sufficient even if the Commonwealth is considered a "territory." Indeed, even a general reference to "Commonwealths" would not meet the terms of COVENANT § 105.

13

0007

naming" requirement of COVENANT § 105 applies only to laws enacted pursuant to Congress' powers under the Territorial Clause (U.S. CONST., art. IV, § 3, cl. 2), and that AIA § 12616 was "not an exercise of Congress's powers under the Territorial Clause." Motion at 16. This latter assertion, however, is directly contrary to the holding of the Ninth Circuit. Linsangan v. United States, 2021 WL 6103047 at *1 fn.1 (9th Cir. 2021) ("Because Section 12616 was a valid exercise of Congress's powers under the Territorial Clause, we need not reach the issue whether it is valid under the Commerce Clause.").[11] Indeed, it was specifically intended to apply to "the territories," and was expressly titled: "EXTENDING PROHIBITION ON ANIMAL FIGHTING TO THE TERRITORIES." U.S. Pub. L. 115-334 (December 20, 2018), 132 Stat. 5015, at § 12616.

Even if the United States is correct that AIA § 12616 could also be applied to the States via the Commerce Clause (See U.S. CONST., art. I, § 8, cl. 3 ("The Congress shall have Power . . . [t]o regulate Commerce . . . among the several States[.]"), there is no basis for its assumption that the Covenant's language, "cannot also be made applicable to the several States," means only "cannot constitutionally." Plaintiff submits that, consistently with the above, "cannot" should be construed, in accordance with its common and ordinary usage, as meaning not just "cannot as a matter of constitutional law," but also "cannot as a matter of practical reality." By the time AIA § 12616 was enacted in 2018, cockfighting was illegal, by state law, in all fifty states. The first

---

[11] The District Court of Puerto Rico also found the Act valid under the Territorial Clause. Club Gallistico de Puerto Rico Inc. v. United States, 414 F. Supp. 3d 191, 208 (D.P.R. 2019). On appeal, the First Circuit did not reach the issue. See Hernandez-Gotay v. United States, 985 F.3d 71, 80 fn. 7 (1st Cir. 2021) ("As the Commerce Clause power is sufficient, we need not reach the Territorial Clause issue.").

14

state to prohibit it was Massachusetts, in 1836, and the last was Louisiana, in 2008.[12] As such, it was also prohibited by 7 U.S.C. § 2156(a) in all fifty states, since 7 U.S.C. § 2156(a) allowed it in only those states where it did not violate state law. AIA § 12616 therefore could not, and did not, affect the law in any state.

### C. The Covenant Should Be Construed Consistently With Its Purpose.

It will be noted that much of the disagreement between the Parties as to the construction of the Covenant turns on the construction of such terms as "law," "apply," "generally," and "cannot." Certainly constructions of these terms can be found – and no doubt will be found by able counsel for the United States – that, if stretched far enough, would support a federal cockfight ban in the CNMI. However, the very ordinariness of these words is all the more reason to avoid stretching them and adhere to their ordinary meanings. To the extent a genuine ambiguity exists, however, it should be resolved in such a way as to advance the purpose of the Covenant. This principle of construction, like the plain meaning rule, is applicable to any legal instrument. *See, e.g.*, Eche, *supra*, 742 F.Supp.2d at 1144 ("If the statutory language is ambiguous, the Court examines the language in its statutory context, looking to the language of the entire statute, its structure, and purpose.") (internal quotation marks omitted). Like that rule, it also has special force for instruments requiring popular ratification:

> For in setting up an enduring framework of government [the Framers of the United States Constitution] undertook to carry out for the indefinite future and in all the vicissitudes of the changing affairs of men, those fundamental purposes which the instrument itself discloses. Hence we read its words, not as we read legislative codes which are subject to continuous revision with the changing

---

[12] Simon Romero, "Bastion of Cockfighting Is Under Pressure to Ban It," New York Times (December 9, 2004) (https://www.nytimes.com/2004/12/09/us/bastion-of-cockfighting-is-under-pressure-to-ban-it.html), NBC News, "La. finally quits cockfights, last state to ban it" (August 11, 2008) (https://www.nbcnews.com/id/wbna26123404).

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the Further Excerpts of Record were filed with the Court and served on Appellee's counsel, Assistant U.S. Attorney John S. Koppell and Abby C. Wright, on August 17, 2023, Pacific Time, by using the appellate court's CM/ECF system.

Dated this 17th day of August, 2023.

                                              BANES HOREY BERMAN & MILLER, LLC
                                              Attorneys for Appellant

                                              */s/ Joseph E. Horey*
By: _____
                                                 Joseph E. Horey