APPEAL NO. 22-16936

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

_____

**ANDREW SABLAN SALAS**,

Plaintiff-Appellant,

vs.

**UNITED STATES OF AMERICA,**

Defendants-Appellees.

_____

Appeal from the District Court for the Northern Mariana Islands
District Court No. 1:22-cv-00008

_____

**PETITION FOR PANEL REHEARING
AND FOR REHEARING EN BANC**

_____

JOSEPH E. HOREY
BANES HOREY BERMAN & MILLER, LLC
4165 Beach Road, Garapan, Saipan
Commonwealth of the Northern Mariana Islands
PO Box 501969, Saipan MP 96950
Telephone: (670) 234-5684
Fax No. (670) 234-5683

## TABLE OF CONTENTS

INTRODUCTION ........................................................................... 1

SUMMARY OF ARGUMENT ....................................................... 2

ARGUMENT ................................................................................. 3

    A. Self-Government Must Be Considered When Evaluating
       the Application of Federal Legislation to the CNMI. ........... 4

    B. The Panel's Toothless Version of the <u>Richards</u> Balancing Test
       Removes Meaningful Self-Government from the Covenant. .... 9

CONCLUSION .............................................................................. 16

## TABLE OF AUTHORITIES

**US-CNMI Covenant**

Section 103 ................................................................... 1, 6, 13

Section 105 ............................................................... 2, 5, 6, 13

Section 502 ..................................................................... 5, 6, 7

Section 504 ............................................................................ 6

**Cases**

<u>American Ins. Co. v. 356 Bales of Cotton</u>, 26 U.S. (1 Pet.) 511 (1828) ... 13

<u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009) ................................... 2, 3

<u>B&G Foods North America, Inc. v. Embry</u>, 29 F.4th 527 (9th Cir. 2022) ... 4

<u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007) .............. 2, 3

<u>Commonwealth of the Northern Mariana Islands v. United States</u>,
279 F.3d 1070 (9th Cir. 2002) ................................................ 4

i

Disability Rights Montana, Inc. v. Batista,
930 F.3d 1090 (9th Cir. 2019)     3

Gale v. Andrus, 643 F.2d 826 (D.C. Cir. 1980)     13

Lamie v. United States Trustee, 540 U.S. 526 (2004)     11

Linsangan v. United States, Ninth Cir. App. No. No. 20-17024
(December 22, 2021), 2021 U.S. App. LEXIS 37902     12

Miller v. Zoning Bd. of Appeals of Lyndon Station,
991 N.W.2d 380 (Wis. 2023)     5

Murphy v. Ramsey, 114 U.S. 15 (1885)     13

Ngiraingas v. Sanchez, 858 F.2d 1368 (9th Cir. 1988),
aff'd, 495 U.S. 182 (1990)     2, 13

O'Donoghue v. United States, 289 U.S. 516 (1933)     13

Roley v. Pierce County Fire Protection Dist. No. 4,
869 F.2d 491 (9th Cir. 1989)     11

Sagana v. Tenorio, 384 F.3d 73 (9th Cir. 2004)     13

Shaw v. Hunt, 517 U.S. 899 (1996)     11

Saipan Stevedore Co. v. Director, Ofc. of Workers' Comp. Programs,
133 F.3d 717 (9th Cir. 1998)     2, 7

Silvester v. Harris, 843 F.3d 816 (9th Cir. 2016)     15

Temengil v. Trust Territory of the Pacific Islands,
881 F.2d 647 (9th Cir. 1989)     13

United States v. Carrillo-Lopez, 68 F.4th 1133 (9th Cir. 2023)     2, 11

United States v. Chang Da Liu, 538 F.3d 1078 (9th Cir. 2008)     15

United States v. Gutierrez-Barba, D. Ariz. No. CR-19-01224-001
(May 25, 2021), 2021 U.S. Dist. LEXIS 99844                    11

United States *ex rel*. Richards v. Deleon Guerrero,
4 F.3d 749 (9th Cir. 1993)                                    2, 3, 4, 9,
                                                              12, 14, 15

United States v. Virginia, 518 U.S. 515 (1996)               11

Young v. Hawaii, 992 F.3d 765 (9th Cir. 2021)                15

Zazzali v. United States, 869 F.3d 1004 (9th Cir. 2017)      6

**Statutes**

7 USC § 2131                                                  9, 13

7 U.S.C. § 2156                                               8, 10

7 U.S.C. § 2160                                               8

U.S. Pub. L. 94-279, 90 Stat. 417 (Apr. 22, 1976)            9

U.S. Pub L. 115-334, 132 Stat. 4490 (December 20, 2018), § 12616   1, 8, 10

U.S. Pub L. 115-334, 132 Stat. 4490 (December 20, 2018), § 12515   8, 9

**Rules**

Fed. R. App. P. 35                                            1

Fed. R. App. P. 40                                            1

Fed. R. Civ. P. 8                                             3

Fed. R. Civ. P. 12                                            3

**Other**

Final Report of the Northern Mariana Islands Commission on Federal Laws  6

Proclamation No. 5564, 51 Fed. Reg. 40,399 (Nov. 3, 1986) 14

Trusteeship Agreement for the Former Japanese Mandated Islands,
(July 18, 1947), 61 Stat. 3301 13

U.N. Gen. Assembly Res. No. 2621, A/RES/2621(XXV) (1970) 14

International Covenant on Civil and Political Rights, A/RES/ 2200A(XXI) 14, 15

United Nations Declaration on the Rights of Indigenous Peoples,
A/RES/61/295 (U.N. Gen. Assem. 2007) 14, 15

Horey, *The Right of Self-Government in the Commonwealth
of the Northern Mariana Islands*, 4 ASIAN-PAC. L. & POL'Y J. 180 (2003) 14

## INTRODUCTION

Appellant Andrew Salas moves the Court for panel rehearing under FRAP 40, and for rehearing *en banc* under FRAP 35.  The panel decision is attached.

This case challenges the application to the Commonwealth of the Northern Mariana Islands (CNMI) of federal legislation[1] having the effect of prohibiting the traditional practice of cockfighting there.

It involves a question of exceptional importance, namely the vitality of the right of self-government guaranteed to the CNMI people by the US-CNMI Covenant.[2]  The standard and procedure for applying and enforcing that right, at issue on this appeal, determines whether the Covenant affords the people meaningful self-government, in conformance with the United States' commitment to the international community in the Trusteeship Agreement, or in the perpetuation of the kind of territorial rule that it was the purpose of that instrument, and the institutions it created, to eliminate.

---

[1]     U.S. Pub L. 115-334, 132 Stat. 4490 (December 20, 2018), § 12616

[2]     Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States of America, *approved by and reprinted in* U.S. Pub. L. 94-241 (March 24, 1976), 90 Stat. 263 (hereinafter COVENANT).  Self-government is guaranteed by Covenant § 103: "The people of the Northern Mariana Islands will have the right of local self-government and will govern themselves with respect to internal affairs in accordance with a Constitution of their own adoption."

The panel decision also conflicts with previous decisions of this Court regarding CNMI self-government, particularly <u>Saipan Stevedore Co. v. Director, Ofc. of Workers' Comp. Programs</u>, 133 F.3d 717 (9th Cir. 1998), <u>United States *ex rel*. Richards v. Deleon Guerrero</u>, 4 F.3d 749 (9th Cir. 1993), and <u>Ngiraingas v. Sanchez</u>, 858 F.2d 1368 (9th Cir. 1988). It also conflicts with this Court's decision in <u>United States v. Carrillo-Lopez</u>, 68 F.4th 1133, 1140 (9th Cir. 2023), and, at the most basic level, with <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), and <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009).

Consideration by the full court is therefore necessary to secure and maintain uniformity of the Court's decisions, and to secure proper analysis of CNMI self-government issues in future cases.

## <u>SUMMARY OF ARGUMENT</u>

The panel was sharply split regarding the methodology for evaluating the application of federal laws to the CNMI. The majority erroneously found that post-1978 amendments to pre-1978 federal laws are not "legislation" within the meaning of Covenant § 105, and – compounding its error – that the analysis of the application of such amendments to the CNMI therefore need not take into account any countervailing right of CNMI self-government. *See generally* Opinion at 4-24. By contrast, Judge Paez, in concurrence, correctly found that such amendments *are* "legislation," and that any federal interest in their application to the CNMI needs to

2

be balanced against the CNMI people's right to self-government, using the balancing test established in <u>Richards</u>, *supra*. *See generally id*. at 28-44 (Paez, J., concurring). On this point, Judge Paez' reasoning is sounder, and should be adopted by the full Court.

The entire panel then erred in its application of the <u>Richards</u> balancing test, reducing it to a mere rational basis test, leaving the Covenant with no more teeth than the Territorial Clause, contrary to its purpose. *See id*. at 24-28 (majority); *id*. at 44-45 (concurrence). The full Court should reverse the trial court's judgment and enter judgment in Appellant's favor based on a <u>Richards</u> balancing test "with teeth," or reverse and remand with instructions to conduct an evidentiary hearing on the federal and local interests implicated in the application of the legislation to the CNMI, or allow an amended complaint.

## <u>ARGUMENT</u>

The case was decided on a Rule 12(b)(6) Motion to Dismiss. All that is required to withstand such a motion is a "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), including "factual allegations… sufficient to state a claim to relief that is plausible on its face" <u>Disability Rights Montana, Inc. v. Batista</u>, 930 F.3d 1090, 1093 (9th Cir. 2019) (*citing* <u>Twombly</u> and <u>Iqbal</u>, both *supra*). If Appellant's Complaint did not meet this standard, he would ordinarily have been granted leave to amend, but this was denied.

*See* Opinion at 24 fn.5. "Dismissal without leave to amend is improper unless it is clear, upon *de novo* review, that the complaint could not be saved by *any* amendment." B&G Foods North America, Inc. v. Embry, 29 F.4th 527, 541 (9th Cir. 2022). The panel, following the trial court, found that Appellant's complaint could not be saved by *any* amendment, because *any* facts supporting the importance of cockfighting in CNMI culture and society were categorically irrelevant, or were necessarily outweighed by the federal interest in prohibiting the practice. This holding was error.

## A.  Self-Government Must Be Considered When Evaluating the Application of Federal Legislation to the CNMI.

The panel majority found that the balancing test enunciated in Richards, *supra*, applies only to "entirely new legislation" enacted after 1978, and not to new amendments to pre-existing laws. *See* Opinion at 23 ("This balancing test is unnecessary for [amendments to] statutes enacted before January 9, 1978."). *See also id.* at 20 (only "entirely new legislation" must meet Covenant § 105's requirements); *id*. at 21 (only "new laws" must do so).[3] It also failed to impose any

---

[3]    The panel found this result required by CNMI v. United States, 279 F.3d 1070 (9th Cir. 2002), thus not open to modification by the panel, on the ground that the Court in that case had found that Covenant § 502 "encompasses amendments." *See* Opinion at 18 n. 2. As Judge Paez points out, however, the fact that Section 502 "encompasses amendments" does not mean that Section 105 cannot *also* encompass them. *See id.* at 30-31 (Paez, J., concurring). Judge Paez' position is the more logical, and should be adopted now that the matter is unquestionably open to clarification or modification by the full Court.

kind of self-government test for new amendments other than the <u>Richards</u> test, with the result that any amendment to a pre-1978 law meeting the formula of Covenant § 502 (applicability to the states and Guam) is applicable to the CNMI *per se*, whether consistent with self-government or not.

The panel majority's decision is contrary to the plain text of Covenant § 105, which is not limited to stand-alone "new laws," or to "entirely new legislation," but applies on its face without qualification to "legislation."[4] An amendment is "legislation" by definition.[5] *See also* Opinion at 33 (Paez, J., concurring) ("Importantly, our analysis in <u>Richards</u> adhered to the plain text of the Covenant, referring consistently to 'legislation'").

The panel majority's opinion is also contrary to the plain text of Covenant § 502, which provides for the application of certain laws "except as otherwise provided in this Covenant."[6] This necessarily means, among other things, except as

---

[4]     *See* COVENANT § 105 ("The United States may enact *legislation* in accordance with its constitutional processes which will be applicable to the Northern Mariana Islands…") (emphasis added).

[5]     *See, e.g.*, <u>Miller v. Zoning Bd. of Appeals</u>, 991 N.W.2d 380, 387 (Wis. 2023) (defining "legislation" as "ma[king] a prospective change by enacting, repealing, *or amending* existing generally applicable law") (emphasis added).

[6]     *See* COVENANT § 105 ("The following laws of the United States in existence on the effective date of this Section and subsequent amendments to such laws will apply to the Northern Mariana Islands, *except as otherwise provided in this Covenant…*") (emphasis added).

provided in Sections 103 and 105 *of* this Covenant. It thereby incorporates the self-government guarantee embodied in those sections. *See also* Opinion at 35 (Paez, J., concurring) ("Section 502(a) thus appears to contemplate that its own requirements operate subordinately to or in conjunction with those of other provisions, including § 105.").[7]

The panel majority's opinion is also contrary to the fundamental canon of construction that legal instruments must be read as a whole.[8] *See* Opinion at 28 (Paez, J., concurring) ("[T]he majority's analysis...overlook[s] that the Covenant must be interpreted as a whole."); *id*. at 34 ("In circumstance where two provisions may be applicable, we do not merely disregard one or the other."); *id*. at 35-36

---

[7]    The majority, for no very clear reason, finds the language of Section 502 "insufficient" to have this effect. *See* Opinion at 20. Judge Paez' view, however, is also supported by the Commission on Federal Laws, established by Section 504 of the Covenant to make recommendation to Congress as to which federal laws should be applicable and inapplicable to the CNMI. *See* Final Report of the Northern Mariana Islands Commission on Federal Laws, ER-58 ("Section 502 makes applicable the following federal laws existing on January 9, 1978, and amendments to those laws provided that they are not inconsistent with the Covenant...[listing laws]...*the most important limitation on the applicability of these laws is Section 103 of the Covenant*.") (emphasis added).

[8]    *See, e.g.*, Zazzali v. United States, 869 F.3d 1004, 1010 (9th Cir. 2017) ("[W]e must look not only to the particular statutory language at issue but also to the language and design of the statute as a whole.... Statutory construction is a holistic endeavor.") (internal quotation marks omitted).

("There is no textual reason to read these provisions as being in conflict with one another.").

The panel majority's opinion is also contrary to Saipan Stevedore, *supra*, in which this Court found that self-government needed to be considered in evaluating the applicability under Covenant § 502. In Stevedore, thus Court found a pre-1978 statute applicable in the CNMI under Section 502 only after finding that, *inter alia*, "there is nothing in the Act itself or that we can foresee in its application that conflicts with the Commonwealth's right of self-government over local and internal matters." 133 F.3d at 725. The Court held that "the interpretation and application of federal laws under Covenant § 502 *must* take into account" the "unique customs and values that have developed [in the CNMI] over hundreds of years." *Id*. at 721 (emphasis added). The panel majority did not recognize this obligation, although Judge Paez did in concurrence. *See* Opinion at 37 n.10 (*citing* Saipan Stevedore).

The panel majority's opinion is also contrary to common sense. It creates a situation where the question whether some new legislation is consistent with self-government needs, or does not need, to be considered depending entirely on the fortuity of whether Congress calls the legislation an "amendment."[9] For example,

---

[9]    *See* Opinion at 38 (Paez, J., concurring) ("Indeed, not only would the majority's interpretation allow amendments of laws in existence on January 9, 1978, to escape the reach of § 105, it would allow them to do so on the arbitrary basis of whether those enactments are classified as original 'laws' or 'subsequent amendments to [existing] laws.").

one section of Pub. L. 115-334 – the section at issue in this case – prohibited cockfighting in the territories, while another prohibited slaughtering dogs and cats for food.[10] Both prohibitions were new to the CNMI. But the cockfighting prohibition was phrased as an amendment to a pre-1978 statute,[11] while the slaughter prohibition, rather than amending the same statute by addition, simply provided, "no person may…knowingly slaughter a dog or cat for human consumption[.]"[12] Under the majority's analysis, this difference in phrasing determines whether or not self-government needs to be considered. This exalts form over substance.[13] It is similar to the TV game show "Jeopardy," where contestants must "answer in the form of a question." If Congress wants to legislate for the CNMI without concern for local self-government rights, it need only "legislate in the form of an amendment."

Finally, the panel majority's opinion is inconsistent with the purpose of the Covenant. As Judge Paez notes, self-government is "one of the guiding principles

---

[10]     *See* U.S. Pub L. 115-334, 132 Stat. 4490 (December 20, 2018) at § 12616 ("Extending prohibition on animal fighting to the territories"); *id.* at § 12515 ("Prohibition on slaughter of dog and cats for human consumption").

[11]     *See* U.S. Pub L. 115-334, *supra*, at § 12616 (beginning: "Section 26 of the Animal Welfare Act (7 U.S.C. 2156) is amended…").

[12]     *See* U.S. Pub L. 115-334, *supra*, at § 12515 (codified at 7 U.S.C. § 2160).

[13]     *See also* Opinion at 38 & fn.11 (Paez, J., concurring) (agreeing with Appellant that "the History of the Animal Welfare Act illustrates the folly lurking in such formalism.").

of the Covenant," Opinion at 36-37 & n.8, and "[t]o allow some 'legislation' to escape the reach of § 105 – which we have interpreted to incorporate the right of self-government enshrined in § 103 – would consequently undermine one of the Covenant's guiding principles." *Id*. at 37. For all these reasons, Judge Paez' reasoning should be adopted by the full Court.

## B. The Panel's Toothless Version of the *Richards* Balancing Test Removes Meaningful Self-Government From the Covenant.

Although it found itself not required to do so, the panel then analyzed the amendment under the <u>Richards</u> balancing test, and found that it favored application of the legislation to the CNMI. *See* Opinion at 22-27.[14] However, the panel did not follow the test correctly. <u>Richards</u> requires assessment of "the federal interest to be served *by the legislation at issue*." <u>Richards</u>, *supra*, 4 F.3d at 755 (emphasis added). The federal interests found by the panel[15] were those articulated in support of other, earlier laws. For example, the panel quoted Congress's statement of findings in 7 USC § 2131, enacted in 1976. *See* Opinion at 26. *See also* U.S. Pub. L. 94-279, 90 Stat. 417 (Apr. 22, 1976) at § 1(b). The panel also quoted a 1976 committee report,

---

[14] Judge Paez joined in this part of the panel majority's opinion, *see id*. at 444-5 (Paez, J., concurring), with the result that is his opinion, which disagreed with the majority so sharply as to the methodology of his Covenant analysis, ended up a concurrence rather than a dissent.

[15] The panel cited "reliev[ing a] burden on interstate commerce, ensur[ing] the humane treatment of animals, and protect[ing] the spread of avian flu." Opinion at 27.

*see* Opinion at 26, and statements in the Congressional Record from 2007.  *See id.* at 26-27.

The panel made this old information seem relevant by claiming, "Mr. Salas argues that [7 U.S.C.] § 2156 *and* its 2018 Amendment do not apply to the CNMI[.]" Opinion at 22 (emphasis added).[16]  That is not accurate.  Appellant challenged *only* the 2018 amendment to the Animal Welfare Act, *not* the original Act, *not* the 1976 enactment of 7 U.S.C. § 2156, and *not* any of the amendments made to it in 2002, 2007, 2008 or 2014.  In his briefs, he was careful to refer to the enactment he was challenging as "Section 12616," *i.e.*, Section 12616 of the Agriculture Improvement Act of 2018.[17]  And with good reason.  None of those earlier enactments had banned cockfighting in the CNMI, or in the island jurisdictions generally, or in any state where it was legal under state law.  On the contrary, they had specifically exempted cockfighting in these places from the animal fighting ban.  Concluding that Congress acted as it did in 2018 by looking at the legislative history of earlier enactments in which it had explicitly refrained from doing that same thing is the height of illogic.[18]

---

[16]     The panel repeatedly used this formulation.  *See, e.g.*, *id.* at 21, 23, 27 (all referring to "§ 2156 and its 2018 Amendment").

[17]     *See* U.S. Pub L. 115-334, 132 Stat. 4490 (December 20, 2018), § 12616.

[18]     Congress authorized the use of military force against Iraq in 1991, against Afghanistan in 2001, and against Iraq again in 2002. However, we cannot simply assume, based on the legislative history of one, that the others were undertaken for the same reasons.

It also conflicts with <u>United States v. Carrillo-Lopez</u>, 68 F.4th 1133, 1140 (9th Cir. 2023), which held that "the views of an earlier legislature are generally not probative of the intent of a later legislature."[19]  Indeed, when the validity of legislation is testing by weighing governmental interests supporting it against countervailing civil and political rights, the government ordinarily "must show that the alleged objective was the legislature's actual purpose for the [legislation], and the legislature must have had a strong basis in evidence to support that justification[.]"  <u>Shaw v. Hunt</u>, 517 U.S. 899, 908 fn.4 (1996).[20]  Only the deferential "rational basis" test allows the court to consider "hypothetical bas[e]s" on which the legislature may have acted.  <i>See, e.g.</i>, <u>Roley v. Pierce County Fire Protection Dist. No. 4</u>, 869 F.2d 491, 493 (9th Cir. 1989).  Yet that is all the panel considered.

Appellant was denied the opportunity to put anything on the local side of the balance at all regarding the extent of interference into local affairs. He sought an

---

[19]    <i>See also, e.g.</i>, <u>Lamie v. United States Trustee</u>, 540 U.S. 526, 534 (2004) ("The starting point in discerning congressional intent is the existing statutory text…and not the predecessor statutes."); <u>United States v. Gutierrez-Barba</u>, D. Ariz. No. CR-19-01224-001 (May 25, 2021), 2021 U.S. Dist. LEXIS 99844 at *7 ("Implicit in this statement is that congressional intent does not necessarily carry over when a statute is amended.").

[20]    <i>See also, e.g.</i>, <u>United States v. Virginia</u>, 518 U.S. 515, 533 (1996) (even under intermediate scrutiny, the government interest asserted in support in the challenged legislation "must be genuine, not hypothesized").

evidentiary hearing to do so,[21] but it was denied.[22]  Instead, the trial court, followed by the panel, held that any interference into local matters at all, no matter how great its extent, could not outweigh the hypothesized federal interests.

The result was to transform the <u>Richards</u> balancing test into a test whereby an entirely hypothetical federal interest can outweigh the greatest possible degree of local intrusion.  If the <u>Richards</u> test has degenerated to this, it no longer distinguishes the Covenant from straight territorial rule.  Here is how the Court decided a challenge from Guam to the same cockfight ban:

> It has long been settled that the Territorial Clause grants to Congress plenary authority over the territories, including Guam.  In legislating for Guam, Congress has full and complete legislative authority and may do for the Territories what the people may do for the states.  Congress needs only a rational basis for its acts exercising such power.  Here, Congress had a rational basis to extend the existing prohibitions on animal fighting to Guam.  The AWA's statement of policy shows that Congress based the regulations in the need to ensure "humane care and treatment" for animals. 7 U.S.C. § 2131.

<u>Linsangan v. United States</u>, Ninth Cir. App. No. No. 20-17024 (December 22, 2021), 2021 U.S. App. LEXIS 37902 at *1-2 (footnote, citations and internal punctuation

---

[21]     *See* ER-20 ("[T]his is something that we're prepared to offer evidence on, offer testimony on the importance of this…").

[22]     *See* ER-17 ("Plaintiff's proffer of providing more facts about how deeply entrenched cockfighting is in the CNMI would not cure the deficiency.").  Ironically, the panel criticized then Appellant for failing to provide more such facts.  *See* Opinion at 24 fn.6.

omitted). That is indistinguishable from what the panel did in this case. It just took longer for the panel to get there.[23]

To place the CNMI and Guam on effectively the same territorial level conflicts with this Court's case law, which sharply distinguishes them.[24] Since a territory is non-self-governing by definition,[25] to do so conflicts with the Covenant itself. Since the purpose of the Trusteeship was to establish self-government,[26] it

---

[23] The panel claims that it "does not foreclose the possibility that a federal law can impermissibly intrude upon the CNMI's internal affairs, which would preclude its application under Covenant § 103 and § 105." Opinion at 27 n. 8. It may not "foreclose the possibility," but its rational basis test effectively does so.

[24] *See, e.g.*, Ngiraingas v. Sanchez, 858 F.2d 1368, 1371 n.1 (9th Cir. 1988), *aff'd*, 495 U.S. 182 (1990) ("Guam's relation to the United States is entirely different…unlike [the CNMI], it is subject to the plenary power of Congress and has no inherent right to govern itself.") (internal quotation marks omitted); Sagana v. Tenorio, 384 F.2d 731, 734 (9th Cir. 2004) ("[B]ecause of its powers of self-government, the CNMI is not under the plenary authority of the United States") (*citing* CNMI v. Atalig, 723 F.2d 682, 687 (9th Cir. 1984)).

[25] *See, e.g.*, O'Donoghue v. United States, 289 U.S. 516, 537 (1933) ("[A] 'territory' of the United States…is a governmental subdivision which happened to be called a 'territory,' but which quite as well could have been called a 'colony' or a 'province.'"); Murphy v. Ramsey, 114 U.S. 15, 44 (1885) (the "right of local self-government" belongs to the people of the states, not the territories); American Ins. Co. v. 356 Bales of Cotton, 26 U.S. (1 Pet.) 511, 542 (1828) (stating that "a territory… has not, by becoming a State, acquired the means of self-government").

[26] Trusteeship Agreement for the Former Japanese Mandated Islands, (July 18, 1947), 61 Stat. 3301, at Art. 6 (US agrees to "promote the development of the inhabitants…toward self-government or independence"); Temengil v. Trust Territory of the Pacific Islands, 881 F.2d 647, 649 (9th Cir. 1989) ("The paramount duty of the United States was to steward Micronesia to self-government."); Gale v. Andrus, 643 F.2d 826, 830 (D.C. Cir. 1980) ("The task of the United States under

makes the Covenant conflict with the purposes of the Trusteeship that it ostensibly fulfilled.[27]  Finally, it conflicts with international law,[28] although the Covenant and the Commonwealth are themselves creatures of international law, and should therefore be interpreted consistently with it whenever possible.

This degeneration of the <u>Richards</u> balancing test is partly the result of long-standing failure by this Court develop it.  Appellant's undersigned counsel once wrote, "The scope of the <u>Richards</u> test remains to be worked out in practice,"[29] but in the twenty years since, this has not occurred.  The tendency instead has been to

---

the Trusteeship Agreement at issue is primarily to nurture the Trust Territory toward self-government.").

[27]     *See* Proclamation No. 5564, 51 Fed. Reg. 40,399 (Nov. 3, 1986) (determining that with the establishment of self-government, "the United States has fulfilled its obligations under the Trusteeship Agreement with respect to the Commonwealth of the Northern Mariana Islands").

[28]     *See* U.N. Gen. Assembly Res. No. 2621, A/RES/2621(XXV) (1970) ("[T]he further continuation of colonialism in all its forms and manifestations [is] a crime which constitutes a violation of the Charter of the United Nations . . . and the principles of international law."); <u>International Covenant on Civil and Political Rights</u>, A/RES/ 2200A(XXI), Art. 1 § 1 ("All peoples have the right of self-determination. By virtue of that right they freely determine their political status and freely pursue their economic, social and cultural development."); <u>United Nations Declaration on the Rights of Indigenous Peoples</u> (<u>UNDRIP</u>), A/RES/61/295 (U.N. Gen. Assem. 2007) at Art. 31(1) ("Indigenous peoples have the right to maintain, control [and] protect . . . the manifestations of their...cultures, including...sports and traditional games.").

[29]     Horey, *The Right of Self-Government in the Commonwealth of the Northern Mariana Islands*, 4 ASIAN-PAC. L. & POL'Y J. 180, 197 n. 58 (2003).

cite to Richards, recite the test, and then find, in conclusory fashion, that the balance tips toward one side because that side outweighs the other.[30] Appellant proposed a clearer explication of the test,[31] but the panel never addressed it. The full Court should do so now, or remand for the district court to do so.

## CONCLUSION

For the foregoing reasons, the full Court should reverse the trial court's judgment and enter judgment in Appellant's favor based on a Richards balancing test "with teeth," or reverse and remand with instructions to conduct an evidentiary hearing on the federal and local interests implicated in the application of the legislation to the CNMI, or allow an amended complaint.

---

[30] *See, e.g.*, United States v. Chang Da Liu, 538 F.3d 1078, 1084 (9th Cir. 2008) ("In this case, the balance tips in favor of applicability because the federal government's significant interest in combating international sex trafficking through United States territories outweighs the intrusion into the CNMI's local affairs.").

[31] Appellant proposed a sliding scale whereby burdens on core self-government interests receive strict scrutiny, and lesser intrusions correspondingly lesser scrutiny. For an example of such a test in another context, *see, e.g.*, Silvester v. Harris, 843 F.3d 816, 821-22 (9th Cir. 2016); Young v. Hawaii, 992 F.3d 765, 784 (9th Cir. 2021). For core self-government interests, *i.e.*, "the right of the people to freely pursue their economic, social and cultural development," *see generally* International Covenant, *supra* n.28. For the application of those interests to the case of an indigenous people, like the people of the Northern Mariana Islands, exercising self-government rights within the international boundaries of a larger sovereign nation, *see generally* UNDRIP, *supra* n.28.

Respectfully submitted this eleventh day of October, 2024.

> BANES HOREY BERMAN & MILLER, LLC
> Attorneys for Appellant


> */s/ Joseph E. Horey*
> By:_____
> Joseph E. Horey

*241011 petition for rehearing final.docx*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 11. Certificate of Compliance for Petitions for Rehearing/Responses

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form11instructions.pdf*

**9th Cir. Case Number(s)** | 22-16936

I am the attorney or self-represented party.

I certify that pursuant to Circuit Rule 35-4 or 40-1, the attached petition for

panel rehearing/petition for rehearing en banc/response to petition is (*select one*):

Prepared in a format, typeface, and type style that complies with Fed. R. App.

⊙ P. 32(a)(4)-(6) and **contains the following number of words**: 4,104 .

*(Petitions and responses must not exceed 4,200 words)*

## OR

○ In compliance with Fed. R. App. P. 32(a)(4)-(6) and does not exceed 15 pages.

**Signature** | /s/ Joseph E. Horey       **Date** | October 10, 2024

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 11**                                                            *Rev. 12/01/2021*